Jay S. SISKIND, et al, Appellants,

v.

The VILLA FOUNDATION FOR EDUCATION, INC., et al, Appellees.

No. A2760.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 19, 1981.

K. Ray Campbell, Byrnes, Myers, Adair & Sinex, Aubrey Dickson Martin, Byrnes, Myers, Adair & Sinex, Houston, for appellants.

David Randolph Smith, Baker & Botts, Houston, for appellees.

Before BROWN, C.J., and JUNELL and PRICE, JJ.

J. CURTISS BROWN, Chief Justice.

The trial court below sustained defendant's special appearance holding there was lack of in personam jurisdiction. Plaintiff perfected appeal claiming that defendants had the necessary minimum contact with the State of Texas to support jurisdiction. We affirm the trial court's action.

The Villa Foundation for Education, Inc. (Villa) is an Arizona Corporation located in that state. It is an institution offering a program designed to help students who are underachieving in their school environment. The program is based on supportive help and individualized instruction. Villa places listings with certain directories containing schools with similar objectives, advertises in a number of well known magazines with national or international circulation, and maintains listings in the yellow pages of telephone books in a number of locations, including some in Texas. Through these sources Villa attempts to maintain a student body consisting of members from all over the country and from other parts of the world.

Mr. Jay Siskind (Siskind or appellant) felt that his son Marc would benefit from such a program. Through Children's Resource Information Service and certain publications he was made aware of Villa's program and decided to inquire as to the possibility of enrolling Marc. Siskind called Villa and, in conformity with the normal practice, was mailed an informational packet. Siskind returned an application for admission accompanied by a fee. Upon processing the application with supportive information Villa sent Siskind an enrollment contract. He signed the enrollment contract and sent it to Villa in Arizona where it was signed and

accepted by one of their agents. A copy was returned to Siskind. Marc was enrolled and completed the second semester in the 1978–79 school year.

It was Villa's practice to invite certain students who were currently enrolled to return the following year. Marc received such an invitation and Siskind was forwarded a new enrollment contract. The enrollment contract was signed and returned to Villa by Siskind with the required check for tuition but with two modifications. A provision that Arizona would be the forum for any disputes arising under the contract was deleted. And a provision that tuition was not refundable was altered to state that tuition would be refundable if Marc left the school and another student was subsequently admitted in his place. The enrollment contract was signed and accepted as modified by Villa in Arizona and a copy was returned to Siskind. Shortly thereafter, Marc was dismissed for being away from campus without permission.

Siskind filed this lawsuit alleging the following causes of action against Villa and against Jeanette Steinbeck, Carmen Coco, Scott Slocum and Edward Beavel, individually, and as agents of the school: (1) fraud concerning the willful misrepresentation made to Siskind about the help Marc would get at Villa; (2) expulsion without proper basis and denial of due process of law; (3) intentional and malicious conspiracy of defendants through the Standards Committee to increase tuition received by recruiting students, obtaining tuition in advance, expelling a portion of them without refund and accepting new students in their places; (4) unjust enrichment for retaining Marc's tuition; (5) defamation of Marc's character; (6) improper medical treatment of Marc as when he came home after being expelled he had contracted hepatitis; (7) breach of contract; (8) unconscionable course of conduct under the Texas Deceptive Trade Practices Act; and (9) usury in that an interest rate of 18% per annum was charged on the outstanding balance of Siskind's account with the school.

Defendants specially appeared under Tex. R.Civ.P. 120a. Jeanette Steinbeck, associate director of Villa, testified at the hearing. The trial court sustained the special appearance and dismissed the suit. The trial court made the following findings of fact:

1. That the Villa Foundation for Education, Inc., d/b/a the Villa School, (the "Villa School" herein), is a private independent school located in Toltec, Arizona.

3. That the Villa School is an Arizona Corporation.

4. That all defendants are residents of Arizona.

5. That the Villa School maintains no bank accounts within Texas.

6. That the Villa School has no real or personal property in Texas.

7. That the Villa School has no offices, telephones, or other facilities within the State of Texas.

8. That the Villa School has no officers, agents, or employees residing in Texas.

9. That all of the Villa School's officers, agents, and employees reside in Arizona.

10. That the Villa School has no agent for service of process within Texas.

11. That at and prior to the commencement of this action by plaintiffs, no employees, agents, or representatives of the Villa School entered Texas in connection with any school function for business.

12. That the Villa School advertises in numerous national and international magazines, newspapers, publications, and directories.

17. That the Villa School sends no persons into Texas to recruit students.

20. That none of the individual defendants and no representatives or employees have ever been to Texas other than the appearance of Jeanette Steinbeck as a witness at the special appearance hearing.

21. That the Villa School has never transacted any business in Texas.

The trial court also made the following conclusions of law:

1. Defendants' conduct, activities, and contacts with Texas establish that defendants did not intend to transact business in Texas or to purposefully avail themselves of the privilege of conducting business in Texas; and Defendants did not intend to invoke the protection and benefits of Texas' law.

4. Defendants do not have sufficient minimal contacts with the State of Texas to warrant exercising in personam jurisdiction under the due process clause of the 14th Amendment to the United States Constitution. This finding is based on the following:

(a) Defendants committed no purposeful act nor consummated any transaction within Texas.

(b) Plaintiffs' cause of action does not arise from any act or transaction by the defendants within Texas; all of the purposeful acts and transactions which plaintiffs allege give rise to a cause of action occurred in Arizona.

(c) Texas has no special interest in granting plaintiffs' relief.

(d) Assumption of personal jurisdiction would offend traditional notions of fair play and substantial justice considering the convenience of the parties, the extent and nature of the activities, the benefits of laws of Texas afforded to plaintiffs and defendants, and the basic equities of this case.

Siskind perfected appeal to this Court.

Appellant brings fourteen points of error which will be grouped, restated and dealt with accordingly. He complains that the trial court erred in sustaining defendants special appearance and dismissing the suit because (1) the defendants did have sufficient minimal contacts with the State of Texas to warrant exercising in personam jurisdiction (points of error 1–5 and 14) and (2) certain findings of fact and conclusions of law made by the trial court are not supported by the evidence (points of error 6–13).

■ Service of process was made on defendants under Tex.Rev.Civ.Stat.Ann. art. 2031b, the Texas Long-Arm Statute. But once the law of a forum state confers jurisdiction over the persons of the defendant, the exercise of jurisdiction must comport with the basic due process requirement of the United States Constitution. The issue in this case does not pertain to the jurisdictional facts alleged or the validity of the process or the service, but whether the constitutional requirements of due process are met. See *T. M. Productions, Inc. v. Blue Mountain Broadcasting Co.*, 620 S.W.2d 886 (Tex.Civ.App.—Dallas 1981, no writ).

■ The due process test for in personam jurisdiction in a state court is whether it is reasonable in the context of our federal system to require the defendant to defend a particular suit in the state where the suit is brought. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The criterion of the test is whether the defendant has such minimum contacts with the forum state to be consistent with traditional notions of fair play and substantial justice in requiring him to defend there. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

*International Shoe, supra*, stands for the proposition that it is fair to subject a nonresident corporation to in personam jurisdiction if the corporation maintains systematic and continuous operations within the state. Appellant contends that Villa's actions in placing advertisements and listings which would come to Texas through national or international circulation, corresponding with prospective and enrolled students, and accepting checks drawn on Texas banks, constitute such systematic and continuous contacts. We hold that the activities of a local school such as Villa offering a service where it is understood the recipient will go to the school for performance and engaging in no other significant contacts with the forum state does not engage in

such systematic and continuous contacts as will support jurisdiction. To hold otherwise would offend the traditional notions of fair play and substantial justice in requiring these institutions to defend suit in any state from which they have admitted a student.

*Hanson v. Denckla, supra,* and *McGee v. International Life, supra,* stand for the proposition that it is fair to subject a non-resident corporation to jurisdiction if the corporation has performed some purposeful act by which it has availed itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws.

■ Texas Courts have interpreted this to require consideration of three factors: (1) there must be a purposeful act or consummation of some transaction in the forum state by the non-resident defendant; (2) the cause of action must arise from, or be connected with, such act or transaction; (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties and the basic equities of the situation. *O'Brien v. Lanpar,* 399 S.W.2d 340 (Tex.1966); *Rosemont Enterprises, Inc. v. Lummis,* 596 S.W.2d 916 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

We take note of the fact that even though the Supreme Court of Texas has indicated the Texas Long-Arm Statute is to reach as far as the Federal Constitutional requirements of due process will permit, *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), the factors used in the federal courts are less strict than those purportedly used in Texas. The two factors applied in federal courts are the first and third Texas factors. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494 (5th Cir. 1974). In the federal test, whether or not the activities within the forum give rise to the cause of action becomes a consideration in the balancing process of the second federal factor (the third Texas factor). *Hearne v. Dow-Badische Chemical Co.,* 224 F.Supp. 90 (S.D.Tex.1963). However, this difference is not material to our disposition of this appeal.

We must analyze the petition to determine if some requisite act has been alleged, and if so, test such act. The causes of action are based on the contractual obligations between the parties, several alleged torts and several statutory causes of action.

■ Although the contract, after modification, contained no provision regarding the law to be applied, it is generally recognized that "the place of the contract is the place where the last act necessary to the completion of the contract was done, that is where the contract first creates a legal obligation". 1 *Williston on Contracts* § 97 at 356 (3rd ed. Jaeger 1957). In view of Siskind's material modifications constituting a counteroffer the contract was accepted and became binding when it was signed by an agent of Villa in Arizona. Even though Siskind is a Texas resident and made payments pursuant to the contract from Texas, the contract involved services which were to be performed totally in Arizona with Marc going to Arizona for such performance. Under these circumstances, we hold the contract to have its primary nexus with Arizona and only incidental contact with the State of Texas.

The alleged torts are defamation, fraud, and conspiracy. All alleged facts and damages concerning defamation occurred in Arizona. The alleged conspiracy through the Standards Committee (consisting of Steinbeck, Slocum, and Coco) to solicit students, expel them for unjust reasons and admit new students, does consist of misrepresentations made to Siskind in Texas. However, this is but a small portion of what must be proved to sustain a cause of action for conspiracy. The remainder of the facts alleged occurred in Arizona. The same is true for the fraud action based on the misrepresentations. Thus, the alleged torts have the school in Arizona as the principal place of their commission.

The main statutory cause of action is under the Deceptive Trade Practices Act. As in the tort causes of action the majority of the alleged unconscionable course of conduct occurred in Arizona. None of the other causes of action, i.e. improper expulsion, unjust enrichment, improper medical treatment, or usury, have Texas as the State with which they have a primary nexus.

Therefore, with respect to Villa, considering primarily the overwhelming portion of this case which deals with the State of Arizona and the minimum level of activity within Texas, we hold that it would offend traditional notions of fair play and substantial justice to require Villa to defend this suit in Texas.

The individual defendants can only be considered to the extent their alleged tortious conduct would make them liable as individuals. They were acting as agents of Villa within the scope of their employment and under full disclosure at all times. The allegations tending to connect defendants Steinbeck, Slocum, and Coco as members of the Standards Committee and Beavel as guardmaster with the State of Texas are weak at best. The torts are alleged, but no specific instances of misrepresentation or acts tending to show conspiracy are enumerated. All that is shown is some communication between Siskind and several of the individuals. We are mindful of the fact that the defendants have the burden of showing lack of in personam jurisdiction. We believe the findings of fact of the trial court from the special appearance hearing that the individual defendants were all residents of Arizona and had never been to Texas nor transacted business in Texas for the school are sufficient to sustain our holding considering the nonspecific nature of the allegations and the fact that the principal nexus of the torts is Arizona. It would be a heavy burden to require these defendants to present their case on the merits so far from their domicile and the place where the torts allegedly occurred. Restated point of error (1) is overruled.

Appellant also complains that certain findings of fact made by the trial court are either supported by no evidence, supported by insufficient evidence or are against the great weight and preponderance of the evidence. There is no merit in these contentions. Appellees' brief clearly points out portions of the record which contain ample evidence to support each of the findings of fact complained of by appellant.

Finally, appellant complains that Mrs. Steinbeck was allowed to testify to a legal conclusion by stating Villa had never transacted business in Texas. A review of the record indicates that an objection was made after the testimony was given. Since there was no motion to strike the testimony any basis for claiming error on appeal was waived. Furthermore, when a hearing is before the court without a jury there is a presumption that the trial judge did not consider any improper or inadmissible evidence. Restated point of error (2) is overruled and the judgment of the trial court is affirmed.

Affirmed.